HARRY A. MINCOFF *d.b.a.* HARRY'S DELICATESSEN *vs.* ANNA MARCARUSO.

MARCH 22, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This is a petition by an employer to review, under the workmen's compensation act, general laws 1938, chapter 300, a preliminary agreement whereby an employee was receiving compensation of $20 per week based upon total incapacity. The cause is before us on the respondent employee's appeal from a decree entered in the superior court granting the petition on the ground that her incapacity had ended and that she was able to resume her usual work.

It appears from the evidence that respondent was a kitchen helper in the employ of the petitioner and had been receiving an average weekly wage of $38. On July

6, 1948 she was injured by falling down a number of steps into the cellar, thereby receiving an "injury to back, chest and left shoulder" as set forth in the preliminary agreement which was entered into on August 5, 1948 and was approved by the director of labor on August 10, 1948.

On the date of the accident the respondent went to the Rhode Island Hospital where various X rays were taken. These proved to be negative and on the same day she returned to her home where she was confined to bed for the next three weeks. During that time and subsequently she was treated by Dr. C. Thomas Angelone, her own doctor, at her home and later in his office until October 22, 1948. At that time she was discharged as no further medical treatment was necessary, although there was a slight tenderness over the coccyx or sacrum. No other treatment was required or received by the respondent after that date.

Evidence on behalf of the petitioner was introduced through Dr. Angelone and Dr. William A. Horan. In general the testimony of these doctors, when read together, showed that there never was any fracture or abnormal condition of the coccyx, about which the respondent first had complained; that after October 22, 1948 there was no objective evidence of any other unusual condition that would support her complaints of pain in the area over the coccyx or in the back, that is, in the scapula; and that she was able, as of the time of the hearing in June 1949, to resume her usual work.

Doctor Horan first examined respondent on September 7, 1948, at which time she gave a history of the accident and stressed the pain in the region of the coccyx and sacrum. His examination was thorough, including the taking of X rays, and it showed no fracture and disclosed no pathological or objective evidence to support the subjective complaint of the employee. He again examined respondent on April 4, 1949, at which time she stated that the pain and difficulty in the region of the coccyx and sacrum had cleared up but that the cause of her disability then was

located in back of the shoulder, that is, in the left scapula. X rays were taken of that area and these, supplemented by further examination, showed no fracture, dislocation, abnormality or other objective evidence to justify the claims of the respondent. He found that "she had good, full function in all the muscles and on no specific motion was there any muscle spasm, tenderness or restriction," and that the pain she complained of was more or less "vague and general." Based on both examinations, he concluded that there was no fracture and no pathological or other objective evidence of any condition to support her subjective claim of pain and disability. He therefore expressed the opinion that she had recovered from the effects of her accidental injury and was able to do her usual work. There was also evidence that petitioner was willing to give her a job as kitchen helper at the same wage rate, although the number of hours and extent of her service would depend on the needs and prosperity of his business.

On the other hand two doctors testified for the respondent. Both agreed that as of the dates of their respective examinations they found no objective evidence of any condition that would ordinarily support the complaints then made by the employee. Doctor Louis A. Sage, who examined respondent on November 23, 1948, testified that he could discover no fracture, dislocation or objective evidence of any definite abnormality in the region of the coccyx or back to support the respondent's claim; and yet he could not say that she made any effort to exaggerate the subjective symptoms. He testified, therefore, that as of that date he believed she would be able to return to work in about three months, namely, about February 1949, but that in order to become gradually acclimated, because of her long absence from all work, she should begin by doing light work for two to four weeks.

Similarly Dr. Roland Hammond, who examined respondent on May 4, 1949, found that her left shoulder needed no more treatment and he could not find any evidence of

permanent injury or muscle spasm, or any objective evidence as to the coccyx or scapula to support her claim of pain and incapacity. However, he felt that she had been frank and was not "faking." Therefore from her complaints of pain and incapacity and from her attempt to use a makeshift bandage to relieve such pain, he concluded that she was not then able to resume her usual work. He accordingly recommended a long corset to relieve the pressure in certain areas where she complained of pain.

The respondent herself testified that she still endured pain when sitting, standing or lying down in certain positions; and that whether she was sitting or standing she could not bend or lift as was necessary in her work. She admitted, however, that she had not received any medical treatment since Dr. Angelone had discharged her on October 22, 1948, and that she had not sought to return to work with her employer or elsewhere in any similar job.

From this and other evidence it appears that the medical testimony is not in serious conflict. All the doctors seem to agree that there was no fracture, dislocation, muscle spasm or other objective evidence to support the respondent's subjective symptoms. There is conflicting evidence only as to the conclusion to be drawn from her claims of pain, alleged incapacity and conduct. The trial justice had the right to believe the respondent but he apparently based his decision largely on the evidence of Dr. Horan, which was substantially corroborated objectively by all the other doctors. In our opinion there is legal evidence to support the trial justice's findings in the decree to the effect that the respondent's incapacity from the accidental injury had ended and that she was able to resume her ordinary work. There is no claim of fraud and in these circumstances such findings are conclusive by virtue of G. L. 1938, chap. 300, art. III, §6. See *Jillson* v. *Ross*, 38 R. I. 145.

But the respondent appears to urge that the evidence of the doctors shows at most that although she was no longer

totally incapacitated she nevertheless was at least partially incapacitated; and that until the extent of her partial incapacity could be properly established she was entitled to receive the total amount specified in the agreement or at least maximum partial compensation. In support of this argument the respondent cites language from several cases, but she misconceives the evidence here which differentiates it from the facts and law as set forth in those cases. In the instant case no doctor testified that the respondent should have "a trial period," as she now contends in her brief, to determine whether she could perform her usual work, or to establish the extent of her alleged partial incapacity. Both Dr. Horan and Dr. Sage testified that when she returned to work she should start with light work for a few weeks and gradually build up the muscle tone or acclimate herself. This was recommended because of her long absence from all work and not because she was still partially incapacitated from the injury or to establish its extent, as respondent claims.

Moreover the trial justice did not find that she was still partially incapacitated and there is no uncontradicted evidence to require such a conclusion as respondent contends. Nor is there any evidence to require a finding that she was able to try only light work to determine the extent of her alleged incapacity. On the other hand there is nothing to show that the employer was acting in bad faith in offering to give her a job in the kitchen and, as stated, there is legal evidence to support the trial justice's finding that her incapacity from the accidental injury had ended and that she was able to resume her usual work. The instant case therefore is clearly distinguishable from cases like *Lorraine Mfg. Co.* v. *Appolony,* 72 R. I. 258, and *Walsh-Kaiser Co.* v. *Kooharian,* 72 R. I. 390, which are chiefly relied on by the respondent on the issue under consideration.

The respondent's appeal is denied and dismissed, the

decree appealed from is affirmed, and the cause is remanded to the superior court.

*Francis V. Reynolds, Joseph V. Cavanagh,* for petitioner.

*Luigi Capasso,* for respondent.